**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SERGIO ESTEBAN GARCIA,

                Petitioner,

vs.                                                      Case No.  3:04-cv-715-J-32MMH

UNITED STATES OF AMERICA,

                Respondent.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the Honorable Timothy J. Corrigan's order (Civ. Dkt. No. 17)[2] recommitting this case to the undersigned for further review in light of Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005).  On August 30, 2005, the undersigned issued a Report and Recommendation (Civ. Dkt. No. 13), recommending that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Dkt. No. 1; Motion to Vacate),[3] filed on August 20, 2004, be denied.  The Court hereby **vacates** its prior Report and Recommendation and issues this new Report and Recommendation.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

[2] "Civ. Dkt. No." refers to documents filed in 3:04-cv-715-J-32MMH.

[3] The Motion to Vacate was referred to the undersigned for preparation of a report and recommendation.  See Order (Civ. Dkt. No. 11) at 1.  However, the undersigned's review is limited to grounds one and three in the Motion to Vacate.  See id. at 1 n.1.

In addition to the Motion to Vacate, Petitioner also filed the Memorandum of Law in Support of Petitioner's Motion to Vacate, Set-Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255 (Civ. Dkt. No. 2; Memorandum) on August 20, 2004, and Petitioner's Traverse to United States' Response in Opposition to Petitioner's 28 U.S.C. § 2255 Motion (Civ. Dkt. No. 9; Reply) on January 10, 2005. Respondent opposes the relief sought in the Motion to Vacate. See United States' Response in Opposition to Defendant's Pro Se Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. No. 6; Opposition), filed on November 8, 2004.

**I.     Background**

On December 10, 2002, Petitioner pled guilty to Count 1 in the Indictment which charged him with conspiracy to distribute 1,000 kilograms or more of marijuana. See Transcript of Tape-Recorded Change of Plea Hearing (Crim. Dkt. No. 190)[4] at 10-11, 14, 21-22, 27-28. Philip S. Greene, Esquire, represented Petitioner in that criminal case. See id. at 1. The district court accepted Petitioner's guilty plea on December 19, 2002. Acceptance of Plea (Crim. Dkt. No. 201).

Petitioner's sentencing followed and was completed over the course of two days – August 19-20, 2003. See generally Transcript of Sentencing Hearing (Crim. Dkt. No. 398; First Sentencing Hearing Tr.); Transcript of Continuation of Sentencing Hearing (Crim. Dkt. No. 399; Second Sentencing Hearing Tr.). During the first day of the sentencing, certain facts regarding Petitioner's conduct and the appropriate guideline sentence were vigorously contested. See generally First Sentencing Hearing Tr. Specifically, Petitioner objected to

---

[4] "Crim. Dkt. No." refers to documents filed in 3:02-cr-163-J-32MMH.

the Pre-sentence Investigation Report's (PSI) (1) drug quantity calculation, (2) application of an aggravating role adjustment, and (3) criminal history point calculation. First Sentencing Hearing Tr. at 6, 8. While the PSI calculated Petitioner's base offense level to be a level 34 based on a finding that at least 3,000 kilograms but less than 10,000 kilograms of marijuana were attributable to him, Petitioner argued that his base offense level should be 32, because less than 3,000 kilograms of marijuana were attributable to him. See id. at 13-14, 103-04. Petitioner also objected to the PSI's application of a four-level leadership enhancement, arguing that the record did not demonstrate that he provided orders to five participants in the conspiracy. Id. at 15. Finally, Petitioner argued that two points should be subtracted from the PSI's criminal history calculation because he did not commit the instant offense within two years of one of his prior convictions. Id. at 14.

After Petitioner presented evidence relating to the guidelines issues, the District Judge stated his findings. Id. at 102. The District Judge agreed with Petitioner's assessment that the record established that at least 1,000 but less than 3,000 kilograms of marijuana were attributable to him, resulting in Petitioner being assessed a base offense level of 32, pursuant to U.S.S.G. § 2D1.1(c)(4). See id. at 103-04. Next, although the District Judge found that the evidence established that Petitioner was a leader in the conspiracy, it determined that Petitioner should be assessed a two-level leadership enhancement under U.S.S.G. § 3B1.1(c), instead of a four-level enhancement under U.S.S.G. § 3B1.1(a). Id. at 104-05. Lastly, the District Judge stated that it was not going to make an adjustment to Petitioner's criminal history points, noting that the adjustment proposed by the Petitioner would not change the criminal history category assessed by the PSI. Id. at 106. Counsel

for the government and Petitioner then presented argument regarding where Petitioner should be sentenced within the applicable guideline range of 135 to 168 months' imprisonment. See id. at 106-124. While Petitioner asked the District Judge to impose a sentence at the low-end of the guideline range, id. at 108, the government asked for a sentence at the high-end of the guideline range, id. at 110.

At the conclusion of the day's proceedings, Mr. Greene asked if there was a location in which he could meet with Petitioner and was informed that he could do so in the United States District Courthouse. Id. at 159-60. Indeed, the District Judge directed the United States Marshals to provide Petitioner with an opportunity to speak with his attorney. Id. at 160. The sentencing hearing resumed the following morning at 8:00 a.m. Second Sentencing Hearing Tr. at 1. During the proceeding, counsel for the government and Petitioner advised the District Judge that they had reached an agreement regarding Petitioner's sentence. Second Sentencing Hearing Tr. at 6-8. The government agreed not to argue that Petitioner should be sentenced at the high-end of the guideline range, Petitioner agreed to abandon his argument that he should be sentenced at the low-end of the guideline range, and the parties stipulated to jointly recommend a sentence of 151 months. See id. at 6-7. Petitioner acknowledged in open court that this was his understanding and agreement. Id. at 7-8. He further acknowledged that he had "the advice of counsel and discussed that issue, the pros and cons and what the issues are, before [he] reached that agreement." Id. at 8. The District Judge accepted the recommendation of 151 months and ultimately adopted that recommendation sentencing Petitioner to 151 months of imprisonment. See id. 8-9, 11.

After imposing the sentence, the District Judge advised Petitioner that he had the right to appeal the sentence within ten days of the hearing and that his failure to file an appeal within this time period would constitute a waiver of his right to appeal. Id. at 13. Shortly thereafter, the following discussion took place between Mr. Greene and the District Judge:

> Mr. Greene: Your honor, I know we have ten days in which to give notice of appeal, but it is our intent not to appeal this case. That's at least at this point. I wanted the Court to be aware of that.
>
> The Court: That's fine, sir. The ten days will come and go. And if you file a notice, then it will be appealed. And if you don't, then it won't. Then, of course, the government has potential rights too. And I don't prejudge any of that.
>
> Mr. Green: Yes, sir. I personally want it on the record, because I won't be here. And my last communication with Mr. Garcia is that we are satisfied and neither of us wish to appeal.

Id. at 14-15. The District Judge entered judgment on August 23, 2003. See Judgment in a Criminal Case (Crim. Dkt. No. 312). No appeal followed.

On October 22, 2003, Cesar Garcia, Petitioner's brother and co-defendant, filed a motion to substitute, Mr. Greene, as his counsel of record in place of his current counsel. Motion to Substitute Counsel (Crim. Dkt. No. 345). In light of Mr. Greene's apparently active representation of Petitioner, the undersigned held a conflict of interest hearing on January 26, 2004, in order to determine whether Petitioner's attorney should be permitted to represent his co-defendant, Cesar Garcia. See Transcript of Conflict Hearing (Crim. Dkt. No. 389). Prior to this hearing, the Court required Mr. Greene to consult with Petitioner on three occasions to explain the potential conflicts inherent in the proposed representation and determine whether Petitioner consented to Mr. Greene's representation of Cesar Garcia.

See Order Scheduling Hearing (Crim. Dkt. No. 350); Order (Crim. Dkt. No. 363); Order (Crim. Dkt. No. 368); Order (Crim. Dkt. No. 378).  Consequently, Petitioner filed a conflict of interest waiver and one addendum.[5]  Conflict of Interest Waiver (Crim. Dkt. No. 373; Waiver); Conflict of Interest Waiver Addendum (Crim. Dkt. No. 381; Addendum).

In the Waiver, Petitioner stated, under the penalty of perjury, that Mr. Greene did not represent him, that he had no pending cases, and that he consented to Mr. Greene's representation of Cesar Garcia.  Waiver at ¶¶ IV, VI.  Mr. Greene also indicated that he "no longer represent[s] [Sergio Garcia] as [Sergio Garcia] has no pending case."  Id. at [unnumbered] 7.  Similarly, in the Addendum, Petitioner again stated, under the penalty of perjury, that he consented to Mr. Greene's representation of Cesar Garcia.  Addendum at [unnumbered] 2.

After a lengthy inquiry at the conflict hearing held on January 26, 2004, the undersigned concluded that Mr. Greene should be permitted to represent Cesar Garcia.  Order (Crim. Dkt. No. 383) at 2-3.  The government disagreed and moved for reconsideration of the Court's Order on March 24, 2004, because it believed that Mr. Greene may still be representing Petitioner.  United States' Motion to Reconsider Order Denying Motion to Reopen Conflict Hearing (Crim. Dkt. No. 403) at 2.  The Court held a hearing on this motion on March 30, 2004.  See Transcript of Motion Hearing re Motion to Reconsider Order Denying Motion to Reopen Conflict Hearing (Crim. Dkt. No. 444; Motion Hearing Tr.)

---

[5] Petitioner also filed one other conflict of interest waiver, see Conflict of Interest Waiver (Crim. Dkt. No. 366), but the Court found it was incomplete and required Petitioner's attorney to consult again with Petitioner before obtaining a new waiver.  See Order (Crim. Dkt. No. 368).

at 4-5. Both Petitioner and Cesar Garcia were present at the hearing. See id. at 3-4. The Court inquired as to the status of the relationship between Mr. Greene and Petitioner. Id. at 6-7. At that time, Petitioner confirmed, under oath, that he reviewed and understood the Waiver and Addendum and signed those documents under the penalty of perjury. Id. at 23-24. Petitioner also stated, under oath, that Mr. Greene's representation ceased after the sentencing hearing because "[they] waive[d] ten days to appeal, [they] decide[d] not to appeal." Id. at 20. In addition, Petitioner again consented to Mr. Greene's representation of Cesar Garcia. See id. at 22-26. Cesar Garcia also reiterated that he wanted to waive his right to conflict-free counsel. See id. at 31-39. Therefore, the undersigned determined that there was no reason to reconsider the Court's previous decision to allow Mr. Greene to represent Cesar Garcia. Order (Crim. Dkt. No. 409).

Despite the representations he made during the Motion Hearing, on August 20, 2004, Petitioner filed the Motion to Vacate, suggesting that his sentence should be vacated because he was denied the effective assistance of counsel when he directed counsel to file an appeal and counsel failed to do so. Motion to Vacate at 4, 6. In his Memorandum, Petitioner maintains that he is entitled to file a belated notice of appeal due to his counsel's failure to file a notice of appeal. Memorandum at 6. Petitioner also requests that the Court hold an evidentiary hearing on this matter. Reply at 1. The Motion to Vacate is now ripe for the Court's review.

**II.     Summary of Argument**

Petitioner asserts that the Motion to Vacate should be granted because he directed counsel to file an appeal and he later learned that counsel failed to follow that instruction. Motion to Vacate at 4; Memorandum at 1, 4-6.  In response to Petitioner's assertions, Respondent contends that Mr. Greene agreed to provide an affidavit disputing Petitioner's claims, but it has not received the affidavit.  Opposition at 7.  Furthermore, Respondent alleges that the record contradicts Petitioner's allegations, and therefore, the Motion to Vacate should be denied.  Id.

**III.    Discussion**

Petitioner contends that after the sentencing hearing on August 20, 2003, he repeatedly asked Mr. Greene to file a notice of appeal and instructed him to file it within ten days of the hearing.  See Memorandum at 4-5; see also Motion to Vacate at 4.  Petitioner alleges that Mr. Greene told him that he would file the notice of appeal and that they would discuss the appeal once Mr. Greene received the record.  See Memorandum at 4. Subsequently, when Petitioner was unable to reach Mr. Greene, Petitioner sent him a letter again instructing him to file the notice of appeal.  See id. at 4-5.  Therefore, Petitioner believed that Mr. Greene had filed the appeal.  See Motion to Vacate at 4.  Indeed, he contends that at the time he consulted with Mr. Greene regarding the possible conflict of interest in Mr. Greene's representation of Cesar Garcia, Petitioner believed that the notice of appeal had been properly filed.  See Reply at 4.  However, Petitioner later learned that Mr. Greene did not file the notice of appeal.  See Motion to Vacate at 4.

It is well settled in the Eleventh Circuit that when counsel ignores a defendant's request to appeal, the court should grant the motion to vacate and the defendant should be permitted to file a belated appeal without any further showing. See McIver v. United States, 307 F.3d 1327, 1330 n.1 (11th Cir. 2002); Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996) (per curiam); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (per curiam); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000); Spivey v. United States, Crim. A. No. 4:94-CR-003-02-HLM, Civ. A. No. 4:96-CV-093-HLM, 1996 WL 735568, at *2 (N.D. Ga. Nov. 4, 1996), abrogated, in part, on other grounds, Stephens v. United States, 14 F. Supp. 2d 1322, 1329 n.5 (N.D. Ga. 1998); United States v. Hill, Civil Action No. 4:96-CV-0143HLM, Criminal Action No. 4:93-CR-014-HLM, 1996 WL 735564, at *1 (N.D. Ga. Oct. 24, 1996). However, the belated appeal must be limited to sentencing issues when the defendant has pled guilty. See Montemoino, 68 F.3d at 417-18; Hill, 1996 WL 735564, at *2.

On the other hand, if a defendant instructs his or her counsel not to file an appeal, he or she cannot later complain that the failure to file an appeal constitutes ineffective assistance of counsel. See Roe, 528 U.S. at 477. In addition, when a defendant has met with his or her attorney to discuss the merits of an appeal and the defendant did not specifically request that the attorney file an appeal, the defendant will not be entitled to file a belated appeal. See Roe, 528 U.S. at 478; Spivey, 1996 WL 735568, at *2.

In this case, the Court first addresses Petitioner's request for an evidentiary hearing. Title 28 U.S.C. § 2255 provides:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt

> hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

Due to the nature of ineffective assistance of counsel claims, evidentiary hearings are generally required. See Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir. 1989); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). In addition, an evidentiary hearing is usually necessary when the defendant's allegations, if true, would warrant relief. See Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002); Holmes, 876 F.2d at 1552.

Nevertheless, not every ineffective assistance of counsel claim mandates an evidentiary hearing. See Holmes, 876 F.2d at 1553; Vick, 730 F.2d at 708; see also Miller v. United States, No. 03-11833, 2004 WL 1206955, at *1 (11th Cir. 2004) (per curiam); United States v. Laetividal-Gonzalez, 939 F.2d 1455, 1465 (11th Cir. 1991), overruled, in part, on other grounds, United States v. Giltner, 972 F.2d 1563, 1566 (11th Cir. 1992). Indeed, an evidentiary hearing is not required when the allegations are unsupported generalizations, affirmatively contradicted by the record, fanciful, patently frivolous, or wholly speculative. See Miller, 2004 WL 1206955, at *2; Aron, 291 F.3d at 715; Laetividal, 939 F.2d at 1465; Holmes, 876 F.2d at 1553; Vick, 730 F.2d at 708; Chapman v. United States, 472 F.2d 117, 118 (5th Cir. 1973) (per curiam);[6] Lafoon v. United States Bd. of Parole, 441 F.2d 490, 490 (5th Cir. 1971) (per curiam); Spivey, 1996 WL 735568, at *7. On the other hand, when the defendant has alleged that he or she told counsel to file the notice of appeal and counsel did not follow his or her instructions and there is no evidence in the record to

---

[6] This case and all Fifth Circuit cases decided prior to September 30, 1981, are binding precedent pursuant to Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

contradict these allegations, then the defendant is entitled to an evidentiary hearing. See Aron, 291 F.3d at 715; Montemoino, 68 F.3d at 416; Hill, 1996 WL 735564, at *2.

In this case, Petitioner is not entitled to an evidentiary hearing because his allegations are affirmatively contradicted by the record, and the record conclusively shows that he is entitled to no relief.[7] Petitioner first contends that he instructed Mr. Greene to file an appeal. See Motion to Vacate at 4. However, the record affirmatively contradicts that claim. First, Mr. Greene stated at the sentencing hearing that "it is our intent not to appeal this case. That's at least at this point." Second Sentencing Hearing Tr. at 14. He also stated that "my last communication with Mr. Garcia is that we are satisfied and neither of us wish to appeal." Id. at 15. Counsel's comments indicate that Petitioner instructed Mr. Greene not to appeal.

In addition, Petitioner's statements in the Waiver contradict his assertion that, at the time the Waiver was filed, he believed that Mr. Greene had properly filed a notice of appeal, and they undermine his assertion that he requested Mr. Greene to appeal his case. See Waiver at ¶ IV. In the Waiver, Petitioner stated, under the penalty of perjury, that "Mr. PHILIP S. GREENE, [d]oes not represent me, at this time, as I have no pending cases." Id. Mr. Greene confirmed that he no longer represented the Petitioner and Petitioner had no pending case. See id. at [unnumbered] 7. Moreover, Petitioner confirmed, under oath, that he read and understood the Waiver and knew that it was made under the penalty of perjury. See Motion Hearing Tr. at 23-24.

---

[7] As the Court concludes that Petitioner is not entitled to an evidentiary hearing, it need not consider Respondent's offer to provide an affidavit from Mr. Greene contradicting Petitioner's allegations. See Opposition at 7. A review of the record in this case conclusively establishes that Petitioner is not entitled to relief, and there is no reason for the Court to consider evidence outside of that record.

Finally, Petitioner's own statements, under oath, to this Court belie his assertions in the Motion to Vacate that he instructed Mr. Greene to file an appeal and that he believed Mr. Greene had filed the appeal. See id. at 20. The following exchange took place between the undersigned and Petitioner:

> THE COURT:  And you were represented throughout the case by Phil Greene, right?
> DEFENDANT SERGIO GARCIA:  Yes, ma'am.
> THE COURT:  And you've pled guilty and you've been sentenced in that case, is that right?
> DEFENDANT SERGIO GARCIA:  Yes, ma'am.
> THE COURT:  And you're not appealing that?
> DEFENDANT SERGIO GARCIA:  No, ma'am.
> THE COURT:  You were represented by Phil Greene.  Does he currently represent you?
> DEFENDANT SERGIO GARCIA:  No, ma'am.
> THE COURT:  Does he currently represent you in any matter whatsoever?
> DEFENDANT SERGIO GARCIA:  No, ma'am.
> THE COURT:  As far as you're concerned, do you have any ongoing attorney-client relationship with Mr. Greene?
> DEFENDANT SERGIO GARCIA:  No, ma'am.
> THE COURT:  When did that representation cease?
> DEFENDANT SERGIO GARCIA:  The day I was sentenced, we waive[d] ten days to appeal, we decide[d] not to appeal.  After that it was over.

Id.  Petitioner's statements, under oath, along with the other evidence in the record conclusively establish that he did not direct Mr. Greene to file a notice of appeal.  To the contrary, the record establishes that Petitioner directed Mr. Greene not to file an appeal.

Petitioner's Memorandum also suggests in one sentence that Mr. Greene rendered ineffective assistance because he did not "advise the Petitioner of the advantages, disadvantages, or probabilities of success on appeal."  Memorandum at 6; see also Motion to Vacate at 4.  Petitioner includes no facts or argument to support this generalized conclusion in the Memorandum.  See Memorandum at 1-6.  Moreover, he fails to assert or

otherwise address the argument in any fashion in his Reply. See Reply at 1-5. This statement appears to be the very type of unsupported generalization which does not warrant a hearing. See Miller, 2004 WL 1206955, at *2; Aron, 291 F.3d at 715; Laetividal, 939 F.2d at 1465; Holmes, 876 F.2d at 1553; Vick, 730 F.2d at 708; Chapman v. United States, 472 F.2d 117, 118 (5th Cir. 1973) (per curiam); Lafoon v. United States Bd. of Parole, 441 F.2d 490, 490 (5th Cir. 1971) (per curiam); Spivey, 1996 WL 735568, at *7. Indeed, it is not clear that Petitioner intended his allegation regarding Mr. Greene's alleged failure to advise him of the advantages, disadvantages or probabilities of success on appeal to raise a separate basis on which to grant the Motion to Vacate. However, if Petitioner did intend to raise such a claim, it is similarly without merit.

The Roe decision instructs that in cases where a defendant has neither instructed the attorney to file an appeal nor not to file an appeal, the determination of whether the attorney performed deficiently is made by "asking a separate, but antecedent question: whether counsel, in fact, consulted with the defendant about an appeal." See Roe, 528 U.S. at 478. Although the Roe decision also states that "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently," id. at 477, it does not explicitly hold that the defendant is barred from arguing that his attorney failed to adequately consult with him about the appeal and this failure constituted deficient performance. Therefore, despite the fact that Petitioner expressly instructed Mr. Greene not to file an appeal, the Roe decision does not appear to bar the Petitioner from arguing that his counsel rendered ineffective assistance by failing to

adequately consult with him about an appeal. Accordingly, the Court will consider the merits of Petitioner's claim.

The Roe Court defined the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478; See Gomez-Diaz, 433 F.3d at 792; Gonzales Cardenas v. United States, Nos. 8:04-cr-82-T-24MSS, 8:05-cv-1566-T-24MSS, 2006 WL 1528859, at *2 (M.D. Fla. June 2, 2006). The record in the instant case indicates that Mr. Greene discussed the topic of an appeal with Petitioner and determined that the Petitioner did not wish to file an appeal. At the sentencing hearing, after the Court advised Petitioner of his right to appeal the sentence, Mr. Greene informed the court that "it [was] not [his and Petitioner's] intent to appeal this case" and "[his] last conversation with [Petitioner] is that [they] [were] satisfied and neither of [them] wished to appeal." Second Sentencing Hearing Tr. at 14-15. Seven months later, when testifying under oath before the undersigned, Petitioner confirmed Mr. Greene's statements by stating, "we waive[d] ten days to appeal, we decide[d] not to appeal." See Transcript of Motion Hearing re Motion to Reconsider Order Denying Motion to Reopen Conflict Hearing at 20. However, the record does not provide information sufficient for the Court to find, despite Petitioner's assertions to the contrary, that Mr. Greene advised petitioner regarding "the advantages and disadvantages of taking an appeal." See Roe, 528 U.S. at 478. Accordingly, based on the current record, the undersigned is unable to conclude that Mr. Greene did "consult" with Petitioner about an appeal as that term is defined in Roe.

The undersigned now turns to the issue of whether Mr. Greene's failure to consult with Petitioner about an appeal constituted deficient performance.  The Roe Court rejected "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Id. at 480.  Instead, the Roe Court held that, under Strickland v. Washington, 466 U.S. 668 (1984), "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to file an appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe, 528 U.S. at 479-80.  Additionally, the Roe Court instructed that, in making this determination, a court should consider whether the defendant's conviction followed a trial or a guilty plea because a guilty plea (1) limits the scope of an appeal and (2) may indicate that the defendant wanted to end the judicial proceedings. Id. at 480. With respect to cases where the defendant pled guilty, the Roe Court instructed courts to consider such factors as "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."  Id.  With respect to Strickland's prejudice prong, the Roe Court held that the defendant must demonstrate that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484.

Petitioner has failed to demonstrate that Mr. Greene's failure to consult with him about an appeal constituted deficient performance.  As the Court has already found that the record establishes that Petitioner directed Mr. Greene not to file an appeal, Petitioner has failed to establish that he reasonably demonstrated to counsel that he was interested in appealing.

See Roe, 528 U.S. at 480. Additionally, the record does not support the conclusion that Mr. Greene had reason to think that a rational defendant, in Petitioner's position, would have wanted to file an appeal. First, Petitioner pled guilty and thereafter received the sentence that he bargained for with the government at the sentencing hearing. See Second Sentencing Hearing Tr. at 8-9, 11; Rogers v. United States, No. C03-0650-JCC-MJB, 2006 WL 448914, at \*5 (W.D. Wash. Feb. 22, 2006) (holding that, because, inter alia, the petitioner received the sentence he bargained for in his plea agreement, the record did not support the conclusion that a rational defendant would have wanted to file an appeal); see also Watzke v. United States, No. 05-C-0525, CRIM. 04-CR-10, 2006 WL 801020, at \*5 (E.D. Wis. March 29, 2006). Second, by pleading guilty, Petitioner waived his right to appeal any non-jurisdictional defects in the proceedings before the plea, thereby, limiting the scope of his appeal. See Roe, 528 U.S. at 480; Alpert v. United States, No. 8:03 CR 54 T 17TBM, 8:04 CV 2580 T 17TBM, 2005 WL 3113216, at \*7 (M.D. Fla. Nov. 16, 2005); Hope v. Crosby, No. 3:03 CV 524 CV 524 RS/EMT, 2006 WL 290516, at \*9 (N.D. Fla. Jan. 10, 2006). Although Petitioner retained the right to appeal the District Judge's guidelines findings, the District Judge ruled favorably in regards to two of the Petitioner's PSI objections, namely, the drug quantity calculation and leadership-role enhancement, and noted that its ruling on the Petitioner's remaining objection would not have any effect on Petitioner's guideline range. See First Sentencing Hearing Tr. at 13-15, 104-06. Given the favorableness of the District Judge's rulings, it is unlikely that Mr. Greene would have reason to think that a rational defendant in Petitioner's position would have wanted to appeal this case.

The Court further finds that Petitioner has failed to establish that a reasonable probability exists that, but for Mr. Greene's failure to consult with him, he would have filed a timely appeal. See Roe, 528 U.S. at 484. The record demonstrates that, by all accounts, Petitioner was satisfied with his sentence and did not wish to appeal. After the District Judge informed Petitioner that he had the right to appeal the sentence within ten days of the hearing and that his failure to file an appeal within this time period would constitute a waiver of his right to appeal, Mr. Greene indicated that both he and Petitioner were satisfied with Petitioner's sentence and neither of them wished to appeal. Second Sentencing Hearing Tr. at 13-15. Petitioner, who was present, did not disagree with this statement. See id. Indeed, seven months later when testifying under oath before the undersigned, Petitioner confirmed Mr. Greene's statements. Petitioner stated, "we waive[d] ten days to appeal, we decide[d] not to appeal." Additionally, Petitioner waited exactly one year from the date of his sentencing before he sought to file a belated appeal in his § 2255 motion. See McClellan v. United States, No. 2:04CV1791, 2:03CR5, 2005 WL 3050307, at * 8 (W.D. Pa. Nov. 14, 2005) (finding that defendant failed to demonstrate Roe's prejudice prong because the record demonstrated that defendant was well aware of his right to appeal at and immediately after sentencing and consciously decided to appeal his sentence approximately eight to ten months later after conducting legal research). Accordingly, Petitioner failed to demonstrate that Mr. Greene's alleged deficient performance deprived him of his right to appeal.

Finally, the undersigned finds that the instant case is clearly distinguishable from Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005). In Gomez-Diaz, the petitioner filed a pro se § 2255 motion arguing that he was denied effective assistance of counsel on

appeal when his counsel failed to comply with his request to file a notice of appeal. Id. at 791. The district court dismissed petitioner's § 2255 motion without holding an evidentiary hearing based on petitioner's failure to identify any ground for appeal that fell within an exception to his appeal waiver. Id. at 790. Although the government contended that petitioner failed to allege that he expressly instructed his lawyer to file an appeal after his lawyer recommended against it, the Eleventh Circuit construed Petitioner's pleadings liberally to allege that he asked his counsel to file an appeal but counsel suggested that he instead file a § 2255 motion. Id. at 791. The Eleventh Circuit found that the pleadings were insufficient to indicate (1) whether petitioner's expression to counsel of his desire to file an appeal triggered counsel's per se duty to do so or, (2) if counsel did not have a per se duty to file an appeal, whether counsel consulted with the petitioner, which the district court found that he had a constitutional duty to do based on the allegations contained in the petitioner's pleadings. Id. at 792. Accordingly, the Eleventh Circuit found that the district court erred by declining to hold an evidentiary hearing to establish the substance of the communications between petitioner and his counsel. Id. at 792-93.

In the instant case, unlike Gomez-Diaz, Petitioner's allegation that he instructed his counsel to file an appeal is affirmatively contradicted by his own affirmative representations, under oath, that he and his counsel decided not to appeal. See Motion Hearing Tr. at 20. Additionally, as discussed above, although the record is unclear as to whether Mr. Greene consulted with Petitioner about an appeal, the record does demonstrate that any failure by Mr. Greene to consult with Petitioner about an appeal did not constitute deficient

performance. Accordingly, grounds one and three can be dismissed in the instant case without an evidentiary hearing.

Based upon the foregoing, the undersigned will recommend that the Motion to Vacate be denied to the extent that Petitioner seeks relief on grounds one and three. The remaining ground will be resolved by the Court in a separate order. See Order (Civ. Dkt. No. 11) at 1 n.1.

## **RECOMMENDATION**

In light of the foregoing, it is hereby **RECOMMENDED**:

Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Dkt. No. 1) should be **DENIED** to the extent it seeks relief on grounds one and three.

**ENTERED** at Jacksonville, Florida, this 26th day of July, 2006

*[signature]*
**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc3

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record
Pro Se Parties